646 A.2d 34

**Gerard Francis HETTICH**

v.

**COMMONWEALTH Of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted June 10, 1994.

Decided July 15, 1994.

72

Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellant.

Joel P. Trigiani, for appellee.

Before McGINLEY and NEWMAN, JJ., and LORD, Senior Judge.

NEWMAN, Judge.

The Pennsylvania Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of Bucks County (trial court) sustaining the statutory appeal of Gerard Francis Hettich (Licensee) from thirty different notices of suspension and revocation issued by the Department.

Licensee was arrested for his participation in the operation of a "chop shop."[1]   On October 5, 1992, Licensee entered a guilty plea to sixteen counts of removal or falsification of vehicle identification numbers (VINs), dealing in automobiles with removed or falsified VINs, and receiving stolen property.[2] Licensee was subsequently sentenced by the court to serve a period of eleven and one-half to twenty-three months with immediate work release and ordered to make restitution and pay court costs.

The Bucks County Clerk of Courts certified Licensee's convictions to the Department on March 8, 1993.  Consequently, the Department issued thirty separate notices to Licensee, dated and mailed on April 1, 1993, informing him that his license would be suspended pursuant to Section 1532(a)(3)[3]

1.  A "chop shop" was defined at the guilty plea colloquy as an illicit operation involving the dismantling of stolen and fraudulently obtained automobiles.

2.  These acts are illegal pursuant to 75 Pa.C.S. § 7102(b), 75 Pa.C.S. § 7103(b), and 18 Pa.C.S. § 3925, respectively.

3.  Section 1532(a)(3) of the Code provides in pertinent part:

(a) **Revocation.**—The department shall revoke the operating privilege of any driver for one year upon receiving a certified record of the

and 1542[4] of the Vehicle Code (Code). Because of these suspensions, Licensee's driving license would be suspended for sixty-one years.

On April 28, 1993, Licensee filed a single statutory appeal, pursuant to Section 1550(a)[5] of the Code, from all thirty notices of suspension issued on April 1, 1993 in which he raised many issues.[6] A *de novo* hearing on Licensee's statuto-

> driver's conviction of or an adjudication of delinquency based on any of the following offenses:
>
> (3) Any violation of the following provisions:
>
> Section 7102(b) (relating to removal or falsification of identification number)
> Section 7103(b) (relating to dealing in vehicles with removed or falsified numbers)
>
> 75 Pa.C.S. § 1532(a)(3).

4.  Section 1542 of the Code provides in pertinent part:

> (a) **General Rule.**—The department shall revoke the operating privilege of any person found to be a habitual offender pursuant to the provisions of this section....
>
> (b) **Offenses enumerated.**—Three convictions arising from separate acts of any one or more of the following offenses committed either singularly or in combination by any person shall result in such person being designated as a habitual offender:
>
> (1) Any offense set forth in section 1532 (relating to revocation or suspension of operating privilege).
>
> (e) **Additional offenses.**—Any additional offense committed within a period of five years shall result in a revocation for an additional period of two years.
>
> 75 Pa.C.S. § 1542.

5.  Section 1550(a) of the Code provides in pertinent part:

> (a) **General Rule.**—Any person ... whose operating privilege has been ..., suspended, ... by the department shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).
>
> 75 Pa.C.S. § 1550(a).

6.  In his notice of appeal, Licensee contended, among other things, that he should have been made aware that his pleading guilty would affect his driving privileges, that his convictions arose from a single criminal episode and therefore should not have been counted separately under the habitual offender provisions of the Code, that the suspension imposed by the Department constituted cruel and unusual punishment,

ry appeal was held before the trial court on October 1, 1993. During the hearing, the Department contended that Licensee's appeal should be quashed because he improperly filed a single statutory appeal from thirty separate and distinct notices of suspension. By order and opinion filed on January 5, 1994, the trial court denied the Department's motion to quash and sustained Licensee's appeal. The instant appeal followed.

■ There are presently two issues for our review: 1) whether the trial court abused its discretion in denying the Department's motion to quash Licensee's single statutory appeal from the thirty separate notices of suspension; and 2) whether the trial court erred in sustaining Licensee's statutory appeal on the basis that Licensee was not informed of the mandatory suspension at the time he pled guilty to the underlying criminal offenses.[7]

I

■ With respect to the first issue, the Department contends that the trial court erred in denying its motion to quash since each of its notices of suspension is a separate and distinct final appealable order. The Department submits that it was improper for Licensee to file a single statutory appeal from multiple notices of suspension, and his appeal should have been quashed.

In *Department of Transportation, Bureau of Driver Licensing v. Perruso,* 160 Pa.Commonwealth Ct. 49, 634 A.2d 692 (1993), this court stated that it was acceptable for a licensee to file a single statutory appeal from multiple suspensions imposed pursuant to criminal activity where the underlying convictions arose from a single criminal proceeding and the licensee's sole and individual operating privilege was being suspended. *See also Department of Transportation, Bureau*

and that the suspension imposed was violative of Article 1 Section 13 of our Constitution.

7. Our scope of review is limited to determining if the trial court committed an error of law or abused its discretion and ascertaining that all necessary findings of fact are supported by competent evidence. *Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992).

*of Driver Licensing v. Hardy*, 160 Pa.Commonwealth Ct. 427, 635 A.2d 230 (1993) (where this court set forth same principle).

In the instant case, it is undisputed that Licensee's statutory appeal arose from a single criminal proceeding, *i.e.*, his guilty plea entered on October 5, 1992, and only involved his individual operating privileges. Nevertheless, the Department contends that *Perruso* is distinguishable from the present case in two respects.

The Department initially asserts that, unlike the situation in *Perruso*, it properly raised the issue of a single appeal from multiple suspensions before the trial court, and thus properly preserved the issue for appeal. However, the fact that the Department preserved this issue does not change the result. In *Brogan v. Department of Transportation, Bureau of Driver Licensing*, 164 Pa.Commonwealth Ct. 559, 643 A.2d 1126 (1994) (*en banc*), this court recently discussed the necessity of filing separate appeals from multiple suspension notices relating to separate vehicle registrations where the licensee's insurance on two vehicles lapsed. We held that in those situations "a party may not file a single statutory appeal from multiple suspension notices relating to separate vehicle registrations." 164 Pa.Commonwealth Ct. at 561, 643 A.2d at 1128. However, we specifically noted that the facts in *Perruso* were distinguishable from the *Brogan* case since in *Perruso* (1) all of the licensee's criminal convictions were obtained at a single proceeding, and (2) the licensee's sole and individual operating privilege was being suspended. While we did note in *Brogan* that the Department in *Perruso* did not present a motion to quash before the trial court, we did not rely on this factor in distinguishing the two cases. Thus, in *Brogan* we accepted the principle that a licensee may file a single appeal from multiple suspensions in license suspension cases arising from criminal convictions when the two factors of *Perruso* are present.

The Department next contends that *Perruso* is distinguishable from the present case because the character of the underlying suspension notices between the two cases are markedly different. For instance, in *Perruso*, only two notices

of suspension were imposed because the licensee pled guilty to possession of two separate controlled substances at the same time. Whereas, in the instant case, the Department specifically relies on the fact that Licensee pled guilty to sixteen different criminal informations dealing with sixteen different motor vehicles, each stolen individually over a four-month period.

The Department's proffered distinction also does not require a different result. The first factor in *Perruso*, that is, that all the criminal convictions were obtained at a single proceeding does not require courts to look beyond that fact and analyze whether the criminal convictions relate to numerous acts occurring on the same or different days. This court has never scrutinized the underlying convictions with respect to the Department's contentions, and we will not require such examination now. *See Hardy* (where licensee was charged with three separate controlled substances offenses committed on two separate days).

■ Accordingly, we hold that where: (1) all of the licensee's criminal convictions were obtained at a single proceeding regardless of the underlying character of the convictions, and (2) the licensee's sole and individual operating privilege was being suspended, a licensee is permitted to file a single statutory appeal from multiple suspension notices.

## II

■ We next turn to the Department's second issue. The Department argues that the trial court erred as a matter of law when it held that Licensee should have been informed of the mandatory operating privilege suspension at the time he pled guilty.

In the instant case, the trial court, expressly relied on our decisions in *Department of Transportation, Bureau of Driver Licensing v. Ahlborn*, 156 Pa.Commonwealth Ct. 196, 626 A.2d 1265 (1993), and *Duffey v. Department of Transportation, Bureau of Driver Licensing*, 147 Pa.Commonwealth Ct. 280, 607 A.2d 815 (1992), for its holding that before Licensee pled

guilty to the criminal charges, he should have been informed that his license would be suspended as a result.

However, our supreme court recently overruled our holdings in *Ahlborn* [8] and *Duffey*. In *Commonwealth v. Duffey*, 536 Pa. 436, 639 A.2d 1174 (1994), the supreme court stated that the loss of driving privileges is a civil collateral consequence of certain criminal offenses. Thus, the court held that when a licensee's suspension is a collateral civil consequence of his conviction, there is no requirement that he know of this consequence at the time of his guilty plea. Relying on *Commonwealth v. Bursick*, 526 Pa. 6, 584 A.2d 291 (1990), the supreme court reasoned that since a trial court's scope of review of an operating privilege suspension is limited, the court cannot entertain arguments in a collateral civil proceeding which attack the validity of the underlying criminal conviction.

Since the trial court in the instant case erred in allowing Licensee to attack the validity of the underlying criminal conviction in a collateral civil proceeding, we are compelled to reverse the order of the trial court in this respect. However, we must remand the matter to the trial court for disposition of Licensee's other arguments which the trial court did not address.

### ORDER

AND NOW, July 15, 1994, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is reversed and the matter is remanded for disposition in accordance with this decision.

Jurisdiction is relinquished.

8. *Ahlborn* was reversed by per curiam order of the supreme court on June 8, 1994.