641 A.2d 1282

**COMMUNITY COUNTRY DAY SCHOOL, Petitioner,**

v.

**PENNSYLVANIA DEPARTMENT OF EDUCATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 17, 1993.

Decided May 9, 1994.

Reargument Denied June 29, 1994.

Edward W. Goebel, Jr., for petitioner.

Jeffrey F. Champagne, Chief Counsel, for respondent.

Before CRAIG, President Judge, and COLINS, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

CRAIG, President Judge.

■ Community Country Day School (CCDS) appeals a decision by the Secretary of Education dismissing exceptions filed by CCDS and ordering the school to reimburse the Department of Education $120,884.04 for overpayments received by CCDS for the tuition and maintenance of approved special education pupils enrolled at the school during fiscal years 1981–82, 1982–83, 1983–84 and 1984–85.

· The parties have stipulated to the following facts. CCDS is a nonprofit private school, which the department has approved as a provider of education to certain socially and emotionally disturbed (SED) children, in accordance with § 1376 of the Public School Code of 1949[1]. CCDS applies a special education program, which it defines as the "normalization" or "applied love" technique, consisting of an integration of applied rules, firm discipline, mutual respect, milieu therapy,

1. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 13–1376.

peer pressure and group resocialization. CCDS is the only Pennsylvania approved private school (APS) that attempts to educate SED students with students who are not socially and emotionally disturbed (non-exceptional students).

CCDS contends that a certain percentage of non-exceptional students must be educated with the approved SED students to produce a totally mainstreamed environment, which includes no distinction made between the SED and the non-exceptional students. The non-exceptional students are prepared and oriented at the beginning of each school year to deal effectively with the aberrant behavior of their SED classmates and thus help the SED students exhibit more normal behavior. All teachers, administrators and support personnel are trained in the normalization technique.

Section 1376(a) of the Code provides that the school district in which an SED student is a resident shall pay to the approved school the greater of either twenty percent (20%) of the actual audited cost of tuition and maintenance, as determined by the department, or the school district's tuition charge per pupil. The Commonwealth will pay to the school the balance due for the costs of tuition and maintenance of an SED student who is enrolled at the school with the department's approval. Tuition payments include the approved cost of special services provided to the student as a necessary part of the program of instruction and maintenance appropriate to the needs of the student. 22 Pa.Code § 171.19(c).

The approved private school must provide to the department financial data necessary to determine the reasonableness of tuition, room and board costs, and the department has the discretion to disallow any costs deemed unreasonable. The department bases its approval of the SED students on individual education program (IEP) reports submitted by the school for each student.

Pursuant to § 1376(c) of the Code, the department provided advance payments to CCDS based upon the department's estimates of reasonable costs in each of the four fiscal years that are the subject of this appeal. Between November, 1983

and February, 1986, the department conducted audits of CCDS' tuition and maintenance costs, and issued final audit reports.

The auditors applied an equivalent full-time students (EFTS) reimbursement entitlement formula, as authorized by 22 Pa.Code § 171.19(c), to determine reimbursement entitlement. The formula consists of calculating (1) the net reimbursable costs, which is the school's total cost of the education program, less disallowances or offsets of the school's costs; (2) the EFTS rate, which is the quotient of the total days attended by non-funded students divided by the statutorily required days of instruction (non-funded EFTS) plus the quotient of the total days attended by funded students divided by the statutorily required days of instruction (approved funded EFTS); (3) the cost per EFTS, which is the quotient of the net reimbursable costs divided by the EFTS rate; and then (4) multiplying the cost per EFTS by the approved funded EFTS to yield the reimbursement entitlement. (*See* attachment, Finding of Fact No. 26, for diagram of formula.)

The auditors concluded that the department had overpaid CCDS during the four fiscal years in question a total of $120,884.04. The school appealed those reports in timely fashion, and requested an administrative hearing.

Hearing Officer Karen Balaban began conducting evidentiary hearings on the audit reports in July, 1990. After the hearings began, CCDS raised the issue that the audits violate due process and equal protection rights of the school and its SED students guaranteed by the Education of Handicapped Act (EHA), 20 U.S.C. §§ 1400–1485, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; however, the Secretary of Education refused to allow those issues to be considered on an interlocutory basis. The hearing officer concluded the evidentiary hearing in March, 1991.

On December 31, 1991, the hearing officer issued her proposed report, which contained findings of fact and conclusions of law. In addition to accepting the auditors' calculations, to which the parties had stipulated, the officer found that CCDS

did not use the term "Applied Love Normalization" in any of the approved students' IEPs. Under the heading of "Special Instructional Media and Material to be Provided" to meet a student's goal of demonstrating appropriate behavior in the classroom and in the school facility, the IEPs contained the term "behavior management techniques" or "positive reinforcement".

The hearing officer then significantly concluded:

4. PDE's [the department's] examination of CCDS records was performed in accordance with prescribed auditing standards.

5. PDE is not authorized by statute to reimburse an APS for education costs attributable to non-approved students integrated into the educational process of the approved students.

6. CCDS' 'Applied Love Normalization' technique does not constitute a 'special service' under 22 Pa.Code Section 171.19(c), and therefore is not eligible for SED cost reimbursement from PDE.

Accordingly, the hearing officer endorsed the auditors' calculations and recommended that CCDS reimburse the department an amount of $120,884.04 for overpayments received in the fiscal years 1981–82, 1982–83, 1983–84 and 1984–85.

CCDS filed exceptions to the proposed report with the department, contending that the officer's interpretation of Code § 1376 and of the department's regulations precludes reimbursement for "mainstreaming" approved SED students with non-exceptional students. The normalization technique utilized by CCDS, according to the school, requires the mainstreaming of SED students at a ratio of five non-exceptional students to every one SED student.

CCDS further asserted that the officer's interpretations are inconsistent with the federal EHA directive that mainstreaming should be utilized where feasible with the use of supplementary aids and services, which is how CCDS classifies the non-exceptional students. CCDS also argues that the non-exceptional students in this case would also satisfy the "rea-

sonable costs" condition stated in § 1376(a) of the Code, and the special services provision contained in 22 Pa.Code § 171.19(c).

Finally, CCDS argued that the EFTS formula used by the department is inapplicable because that formula does not take into account the fact that costs for educating SED students are higher than those for educating non-exceptional students.

The Secretary, in addressing CCDS' exceptions, noted that, under 22 Pa.Code § 171.41(a), an allowable (reimbursable) cost or expense must be (1) a net expense; (2) adequately documented; (3) a properly allocated or apportioned cost of the special education of Pennsylvania resident approved reimbursed students in an approved private school; (4) reasonable; (5) paid or incurred during the audit year; (6) identifiable through the application of generally accepted accounting principles; and (7) not excluded by a provision contained in the Private Schools Standards, 22 Pa.Code §§ 171.11–171.195, or the Code. Furthermore, "[o]nly if adequate documentation is supplied by the approved private school to support an expense and income related to that expense ... will an expense be considered for reimbursement." 22 Pa.Code § 171.41(d).

The Secretary then made the following conclusions. The non-exceptional students cannot be characterized as "specific support services" or "special services." The IEPs do not require the "special services" of the five-to-one ratio advocated by CCDS of non-exceptional students to SED students. CCDS failed to establish a basis for an allocation of allowable costs as an alternative to the EFTS formula, pursuant to 22 Pa.Code § 171.41(f).

Therefore, the Secretary decided that CCDS cannot be reimbursed for any of the costs of tuition and maintenance of non-exceptional students. Accordingly, the Secretary accepted the hearing officer's recommendation that CCDS reimburse the Commonwealth $120,884.04 in overpayments received, and he dismissed the exceptions filed by CCDS.

CCDS now contends that it is entitled to all but $6462 because (1) state laws must be interpreted consistently with

the federal laws which require that exceptional children be educated with non-exceptional children to the maximum extent, and because (2) the presence of a 5:1 ratio of non-exceptional students to SED students, which the school defined in the IEPs as a behavior management technique, constitutes special services necessary for the education of the SED students.

■ This court's scope of review in reviewing an administrative agency's decisions, even when the Secretary adopts a hearing examiner's recommendations, is limited to a determination of whether the decision was in accordance with law, the findings of fact were supported by substantial evidence, or constitutional rights were violated. *Ashbourne Educational Services, Inc. v. Department of Education,* 92 Pa.Commonwealth Ct. 272, 499 A.2d 698 (1985).

There is no dispute that both federal and state laws require that exceptional students be mainstreamed (integrated) with non-exceptional students. Section 1412(5) of the EHA, 20 U.S.C. § 1412(5)(B) specifies that states seeking federal funding will "mainstream" disabled children (which EHA § 1401 defines, in part, as SED children), i.e.,

> that they will educate them with children who are not disabled, and that they will segregate or otherwise remove such children from the regular classroom setting 'only when the nature or severity of the handicap is such that education and regular classes ... cannot be achieved satisfactorily.'

*Honig v. Doe,* 484 U.S. 305, 311, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988).

State regulations in effect during the fiscal years in question[2] required that intermediate units and school districts "mainstream those exceptional persons who can profit by an appropriate program of education or training in a regular class." 22 Pa.Code § 13.9. Title 22 Pa.Code § 13.1 defined mainstreaming as "[a]n educational process of maintaining or

---

**2.** Title 22 Pa.Code §§ 13.1 and 13.9, cited below, were deleted at 22 Pa.Code § 14.74(a), effective July 1, 1990, and replaced by 22 Pa.Code Chapter 14.

returning exceptional persons who can best profit from the placement, to the regular education classroom, with needed supportive services being provided in accordance with the nature of the placement."

The program at CCDS commendably incorporates the integrated classroom setting encouraged by the EHA and mandated by the state regulations. However, this case does not actually have an issue that is solely federal, as contended by the school, because the federal and state laws are consistent with each other.

Therefore, the only issue is whether the non-exceptional students at CCDS qualify, under statutory and regulatory law, as a basis for additional cost reimbursement to the school.

Section 1376(a) of the Code provides that the Commonwealth shall pay up to 80% of an SED student's reasonable cost for tuition, room and board. Section 1376(c) requires that the approved private school submit information to the department to establish an estimate of reimbursable costs. Title 22 Pa.Code § 171.41(d) restricts reimbursable expenses, in part, to those expenses which are "adequately documented."

To obtain approval for the SED students seeking enrollment at CCDS, the school submitted IEPs to the department as documentation of the alleged reasonable expenses to educate each SED student. Title 22 Pa.Code § 341.15 provided that an IEP should contain:

(1) a statement of the present level of educational performance of the person;

(2) a statement of annual goals which describes the expected behaviors to be achieved through the implementation of the Individualized Education Program of the person;

(3) a statement of the short-term instructional objectives;

(4) a statement of *specific educational services to be provided to the child,* including a description of all special education and related services required to meet the unique needs of the child, any special instructional media and materials to be provided; and the type of physical education program in which the child will participate;

(5) a description of the extent to which the child will be able to participate in regular education programs;

(6) the projected date for initiation and the anticipated duration of services; and

(7) appropriate objective criteria, evaluation procedures, and schedules for determining, on at least an annual basis, whether the instructional objectives are being achieved. (Emphasis added.)[3]

The IEPs submitted by CCDS state that the school will provide "behavior modification techniques" or "behavior management techniques" to help the SED students attain their respective goals and objectives. However, the documentation provided to the department does not *specify* the educational services that CCDS will provide; it contains no description of the applied love or normalization technique.

Moreover, nothing in the IEPs refers to the 5:1 ratio asserted by CCDS as necessary to achieve the maximum effect of its utilized technique. Although the school contends that the five non-exceptional students in the 5:1 ratio constitute "special services provided," which are reimbursable under 22 Pa.Code § 171.19(c), the IEPs contain no indication, i.e., notice to the department, that CCDS was making such a characterization.

CCDS argues that it requested in 1983, but never received, assistance from the department on how to properly document the services provided to take into account the behavior management program. This court must seriously question why the department refused to respond to their request (counsel for the department stipulated that she did see a letter containing the request), but CCDS cites no law supporting its proposition that the department must provide instruction to the approved private school on how to document the special educational services provided.

3. These IEP requirements are presently listed at both 22 Pa.Code § 14.32(f) and at 22 Pa.Code § 342.32(d).

Consequently, because there is no authority for a school to receive funding for non-exceptional students, and because there is not adequate documentation to support an argument that the department even passively approved such funding to promote the school's applied educational technique, the formula offered by CCDS as an allocation of direct costs to allowable activities, pursuant to 22 Pa.Code § 171.41(f), is not acceptable under the law as written.[4]

Accordingly, because the Secretary did not commit any errors of law, and because substantial evidence supports the findings of fact, we affirm the Secretary's decision to dismiss exceptions filed by CCDS and to order CCDS to reimburse the Commonwealth for overpayments received in the amount of $120,884.04.

## ORDER

NOW, May 9, 1994, the order of the Secretary of Education, dated November 20, 1992, at FY Audits 1981–82, 1982–83, 1983–84 and 1984–85, directing that petitioner reimburse the Commonwealth $120,884.04 for overpayments received from respondent, is affirmed.

### ATTACHMENT

### FINDING OF FACT NO. 26

26. Application of the EFTS reimbursement entitlement formula used by PDE's auditors in their final audit report resulted in the following calculations for fiscal year 1981–82:

---

**4.** Because the record indicates that the program at CCDS is meritorious and has been successful, the department may well wish to work with the school in an effort to maintain the program.

(a) Net reimbursable costs

| | |
|---|---:|
| CCDS' total cost of educational program | $171,263.41 |
| less disallowances or offsets of CCDS costs | − 77,293.64 |
| Net reimbursable costs | $ 93,969.77 |

(b) Equivalent Full Time Student (EFTS) rate

| | | |
|---|---|---:|
| total days of attendance of <u>all non-funded students</u>: | 13342 = | *74.122 |
| statutorily required days of instruction | 180 | |

*74.122 is the non-funded EFTS

| | | |
|---|---|---:|
| total days of attendance of <u>approved funded students</u> | 167 = | *.928 |
| statutorily required days of | 180 | |

*.928 is the approved funded EFTS

| | | |
|---|---|---:|
| approved funded EFTS | | .928 |
| plus non-funded EFTS | + | 74.122 |
| EFTS = | | 75.050 |

(c) Cost per EFTS

| | |
|---|---:|
| Net reimbursable costs | $93,969.77 |
| divided by EFTS | 75.050 |
| Costs per EFTS = | $1,252.10 |

(d) Reimbursement entitlement

| | |
|---|---:|
| costs per EFTS | $1,252.10 |
| multiplied by approved funded EFTS | .928 |
| reimbursement entitlement | 1,161.95 |

(Joint Stipulation of Facts, Exhibit J2, paragraphs 12 and 26)