Joseph P. BRAIG, Petitioner,

v.

PENNSYLVANIA STATE EMPLOYES'
RETIREMENT BOARD,
Respondent.

Julian F. KING, Petitioner,

v.

PENNSYLVANIA STATE EMPLOYES'
RETIREMENT BOARD,
Respondent.

Edna F. WHITE, designated Beneficiary
and Executrix of the Estate of Thomas
A. White, deceased, Petitioner,

v.

PENNSYLVANIA STATE EMPLOYES'
RETIREMENT BOARD,
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 13, 1996.

Decided Sept. 12, 1996.

. . . .

David A. Yanoff, for petitioners.

Nicholas Joseph Marcucci, Deputy Chief Counsel, for respondent.

Before COLINS, President Judge, and PELLEGRINI and FRIEDMAN, JJ.

FRIEDMAN, Judge.

Julian F. King, Edna F. White, Executrix of the estate of Thomas A. White, and Joseph P. Braig (collectively, Claimants) appeal from an order of the Pennsylvania State Employes' Retirement Board (SERB), denying Claimants' request for interest on retirement benefits withheld by the State Employes'

Retirement System (SERS) pursuant to a purported pension forfeiture.

## I. Julian F. King

Julian F. King was appointed to the Philadelphia County Court of Common Pleas in December of 1971 and became a member of SERS on December 30, 1971. (SERB's Finding of Fact, No. 1.) In November of 1973, King was elected to a ten-year term with the common pleas court and, in November of 1983, King was re-elected to a second ten-year term with that court. (SERB's Finding of Fact, No. 2.)

By Opinion and Judgment filed February 25, 1988, however, the Pennsylvania Supreme Court ordered and adjudged, pursuant to Article V, Section 18 of the Pennsylvania Constitution, that King be removed from judicial office, that his salary cease from the date of the entry of the supreme court's order and that he, thereafter, be held ineligible to hold judicial office. (SERB's Finding of Fact, No. 3.)

Consequently, on May 17, 1988, King signed a SERS Application for Retirement Allowance in which he elected to withdraw an amount equal to all his previously taxed contributions and to receive a reduced retirement allowance in the form of a joint and survivor annuity. The application was received by SERS on June 13, 1988, bearing a purported effective date of retirement of February 26, 1988, the day after King's termination by the supreme court. (SERB's Finding of Fact, No. 4.)

By order dated July 20, 1988, SERB denied King's Application for Retirement Allowance except for the portion requesting to withdraw all previously taxed contributions. (SERB's Finding of Fact, No. 5.) SERB concluded that, because King was removed from office under Article V, Section 18($l$) of the Pennsylvania Constitution, Article V, Section 16(b) of the constitution created a pension forfeiture provision.[1] (SERB's Finding of Fact, No. 5.) This court affirmed SERB's decision in *King v. State Employes' Retire-*

---

1. At the time of SERB's decision, Article V, Section 16(b) of the Pennsylvania Constitution stated, in relevant part:

No compensation shall be paid to any justice, judge or justice of the peace who is suspended or removed from office under section eighteen of this article or under article six.

*ment Board,* 129 Pa.Cmwlth. 444, 566 A.2d 323 (1989). (SERB's Finding of Fact, No. 6.)

By decision dated May 18, 1992, however, the supreme court reversed.[2] *See Glancey v. State Employes' Retirement Board,* 530 Pa. 481, 610 A.2d 15 (1992).[3] In light of the *Glancey* decision, SERB calculated King's retirement benefit, taking into account King's previous withdrawal in an amount equal to his accumulated deductions. On July 22, 1992, SERS issued King a check in the amount of $88,737.56, representing King's monthly retirement benefits for the period from February 26, 1988 to July 1, 1992, less federal tax payment withheld. Since that date, SERS has been making monthly annuity payments of $1,931.40 to King. (SERB's Finding of Fact, No. 10.)

## II. Thomas A. White

Thomas A. White initially became a member of SERS when he was elected to the Pennsylvania General Assembly in 1952. In 1959, he withdrew the contributions and interest which were attributable to his service in the General Assembly. (SERB's Finding of Fact, No. 11.)

White again became a member of SERS on January 2, 1978, after being elected to the Philadelphia County Court of Common Pleas the previous year.[4] In November of 1987, White was re-elected to a second ten-year term. (SERB's Finding of Fact, No. 12.)

By Opinion and Judgment filed February 25, 1988, however, the Pennsylvania Supreme Court ordered and adjudged, pursuant to Article V, Section 18 of the Pennsylvania Constitution, that White, like King, be removed from judicial office, that his salary

cease from the date of the entry of the supreme court's order and that he, thereafter, be held ineligible to hold judicial office. (SERB's Finding of Fact, No. 13.)

Consequently, on May 23, 1988, White signed a SERS Application for Retirement Allowance in which he elected to withdraw an amount equal to all his accumulated deductions and to receive a reduced retirement allowance for life with a guaranteed total payment. The application was received by SERS on June 13, 1988, bearing a purported effective date of retirement of February 26, 1988, the day after White's termination by the supreme court. (SERB's Finding of Fact, No. 14.)

By order dated July 20, 1988, SERB denied White's Application for Retirement Allowance except for the portion requesting to withdraw an amount equal to his accumulated deductions.[5] (SERB's Finding of Fact, No. 15.) SERB concluded that, because White was removed from office under Article V, Section 18(*l*) of the Pennsylvania Constitution, Article V, Section 16(b) of the constitution created a pension forfeiture provision. (SERB's Finding of Fact, No. 15.)

On October 31, 1989, while the *Glancey* decision was still pending, this court vacated and remanded SERB's order, holding that remand was necessary to determine whether White had been a member of SERS during his time in the General Assembly and, if so, whether White had withdrawn his benefits, thereby terminating his membership and subjecting himself to modifications of the State Employes' Retirement Code (Retire-

---

2. In the interim, by letter dated October 28, 1991, King elected to withdraw a lump sum amount equal to all of his contributions and interest. SERS received that letter on October 31, 1991. (SERB's Finding of Fact, No. 7.) On November 13, 1991, SERS paid to King a sum equal to his total accumulated deductions, in the amount of $126,457.57. (SERB's Finding of Fact, No. 8.)

3. In *Glancey,* the Pennsylvania Supreme Court held that "neither the history nor the language of the Constitution support a conclusion that Article V, Section 16(b) is meant to create a broad pension forfeiture provision." *Id.* at 483, 610 A.2d at 16.

4. On February 13, 1979, White had purchased 2.000 years of retirement credit for previous state service for the period from December 1, 1952 to November 30, 1954. (SERB's Finding of Fact, No. 12.)

5. On August 4, 1988, White received payment from SERS representing an amount equal to his accumulated deductions of $38,986.86, less $1,178.31 for an agency debt, plus an additional $660.64 representing unpaid interest, for a total of $38,469.19. (SERB's Finding of Fact, No. 16.)

ment Code),[6] without unconstitutional impairment of contract. (SERB's Finding of Fact, No. 17.) In the meantime, on August 17, 1990, White passed away, and his widow, Edna F. White (Executrix), was designated executrix of his estate and sole beneficiary with regard to state retirement benefits. (SERB's Findings of Fact, Nos. 18, 20.)

On May 18, 1992, in light of the subsequently decided *Glancey* decision, SERB recalculated White's retirement benefit, taking into account White's previous withdrawal in an amount equal to his accumulated deductions. (SERB's Finding of Fact, No. 19.) In June, September and October of 1992, SERS received White's death certificate and, upon request, other essential beneficiary information, properly completed and notarized, from Executrix. (SERB's Findings of Fact, Nos. 20–22.) Accordingly, on October 23, 1992, SERS paid a death benefit to Executrix in the amount of $381,605.73, representing the remaining initial present value of White's retirement account. (SERB's Finding of Fact, No. 23.)

### III. Joseph P. Braig

Joseph P. Braig was elected to a ten-year term on the Philadelphia County Court of Common Pleas in November of 1975 and became a member of SERS on January 5, 1976. He was subsequently re-elected to a second ten-year term in 1986. (SERB's Finding of Fact, No. 24.)

Braig voluntarily resigned from office, however, in March of 1989, with a date of termination of service of March 27, 1989. (SERB's Finding of Fact, No. 25.) Subsequently, on or before April 5, 1989, the United States District Court for the Eastern District of Pennsylvania, in Criminal Case No. 88–488, entered judgment on Braig's guilty plea to three counts of a multi-count indictment of federal offenses, imposing a fine, suspended prison sentence, three years probation and other conditions. (SERB's Finding of Fact, No. 26.)

Consequently, on April 19, 1989, Braig signed a SERS Application for Retirement Allowance in which he elected to withdraw an amount equal to all of his contributions and interest and to receive a reduced retirement allowance in the form of a joint and survivor annuity. The application was received by SERS on June 16, 1989, bearing a purported effective date of retirement of March 28, 1989, the day after Braig's resignation. (SERB's Finding of Fact, No. 27.)

On September 8, 1989, the Judicial Inquiry and Review Board (JIRB) petitioned the Pennsylvania Supreme Court to issue a Rule to Show Cause why Braig should not be automatically removed from judicial office under Article V, Section 18(*l*) of the Pennsylvania Constitution for "misbehavior in office." (SERB's Finding of Fact, No. 28.) On December 22, 1989, the supreme court issued the Rule to Show Cause, and Braig timely filed a brief in response.

By order dated February 6, 1990, SERB denied Braig's Application for Retirement Allowance except for the portion requesting to withdraw an amount equal to his accumulated deductions.[7] (SERB's Finding of Fact, No. 31.) SERB concluded that, because Braig was automatically removed from office for committing an infamous crime under Article VI, Section 7 of the Pennsylvania Constitution, Article V, Section 16(b) of the constitution created a pension forfeiture provision. (SERB's Finding of Fact, No. 31.)

On February 21, 1991, this court reversed SERB's order on the grounds that SERB was required to defer to the supreme court's exclusive disciplinary jurisdiction over the judiciary. (SERB's Finding of Fact, No. 32.) On April 29, 1991, the supreme court ruled on the merits of the JIRB's Rule to Show Cause, concluding that Article V, Section 18(*l*) of the Pennsylvania Constitution did not apply to Braig and, therefore, dismissing the December 22, 1989 Rule. (SERB's Finding of Fact, No. 37.)

---

6. 71 Pa.C.S. §§ 5101–5956.

7. On September 13, 1989, SERS had paid Braig the sum of $47,617.17, representing an amount equal to his total accumulated deductions of $50,583.74 less $2,966.57 for federal taxes withheld. (SERB's Finding of Fact, No. 29.)

On May 18, 1992, again in light of *Glancey,* SERB re-calculated Braig's retirement benefit, taking into account Braig's previous withdrawal in an amount equal to his accumulated deductions. On August 4, 1992, SERS issued Braig a check in the amount of $64,864.16, representing Braig's total monthly retirement benefits for the period from March 28, 1989 to July 30, 1992, less federal tax payment withheld. Since that date, SERS has been making monthly annuity payments of $1,713.30 to Braig. (SERB's Finding of Fact, No. 40.)

### IV. King, White & Braig

By letter dated May 27, 1992, Claimants requested six percent (6%) simple interest from the time of filing for their retirement allowances until the time such allowances were ultimately granted by SERB. (SERB's Finding of Fact, No. 41.) By letter in response, dated July 23, 1992, SERS denied Claimants' request. (SERB's Finding of Fact, No. 42.) Consequently, on August 11, 1992, Claimants filed an appeal of SERS' denial of their request with SERB. (SERB's Finding of Fact, No. 43.)

By agreement, the parties consolidated their claims for purposes of appeal and entered into stipulations of fact in lieu of an evidentiary hearing before a hearing examiner. (SERB's op. at 1, 15.) Based on these stipulations, as well as briefs filed by each party, the hearing examiner issued an opinion on July 11, 1994, recommending that each of the Claimants be paid interest on the retirement allowances and benefits previously withheld by SERB. (SERB's Finding of Fact, No. 47.)

On August 10, 1994, SERS filed exceptions to the hearing examiner's recommendations. (SERB's Finding of Fact, No. 48.) On August 29, 1994, Claimants filed a brief in opposition to SERS' exceptions and in support of the hearing examiner's recommendations. (SERB's Finding of Fact, No. 49.)

On appeal, SERB declined to adopt the hearing examiner's recommendations, holding that "[SERB's] decision to withhold retirement benefits from Claimants was consistent with the state of the law at the time and does not constitute 'wrongful withholding' for purposes of awarding interest to Claimants." (SERB's Conclusion of Law, No. 4.) Accordingly, SERB denied Claimants' request for interest on their retirement benefits. It is from this order that Claimants now appeal.[8]

■ On appeal, we are faced with the threshold issue of whether SERB is under either a statutory or contractual obligation to pay Claimants interest on retirement allowances previously withheld by SERB. If no obligation arises under either statute or contract, we must next determine whether SERB is under an independent obligation, by virtue of the common law of this Commonwealth, to pay Claimants interest on their withheld benefits.

Turning now to the first issue, we note, as did SERB in its decision, that *Cianfrani v. State Employees' Retirement Board,* 505 Pa. 294, 479 A.2d 468 (1984) (*Cianfrani II*), is controlling. After the Pennsylvania Supreme Court, in *Cianfrani v. State Employees' Retirement Board,* 498 Pa. 204, 445 A.2d 737 (1982) (*Cianfrani I*), held the Public Employee Pension Forfeiture Act (Act 140)[9]

---

8. Our scope of review on appeal from a final order of a Commonwealth agency is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Community Country Day School v. Pennsylvania Department of Education,* 164 Pa.Cmwlth. 42, 641 A.2d 1282 (1994).

Here, because the parties entered into a stipulation of fact and, thus, do not dispute that such facts are supported by substantial evidence, we will limit our review to a determination of whether constitutional rights have been violated or an error of law has been committed. A Com-

monwealth agency's conclusions of law are fully reviewable by this court. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education),* 508 Pa. 360, 498 A.2d 800 (1985). An agency determination based on a conclusion of law will be upheld only if legally correct. *Horton v. Jefferson County–Dubois Area Vocational Technical School,* 157 Pa.Cmwlth. 424, 630 A.2d 481 (1993).

9. Act of July 8, 1978, P.L. 752, §§ 1–5, *as amended,* 43 P.S. §§ 1311–1315. Act 140 provides for disqualification and forfeiture of retirement benefits for public officials or employees who are convicted of, or who plead guilty or no defense

to be unconstitutional as applied to the claimant in that action,[10] the claimant filed a second action, the resolution of which is the subject of *Cianfrani II*, seeking to recover, *inter alia*, interest on all accumulated retirement benefits previously withheld by SERB purportedly in compliance with Act 140.

Addressing the issue of whether SERB was mandated by statute or affirmatively obliged by contract to pay interest on retirement benefits previously withheld from the claimant, *Cianfrani II* explains that, although the statutory terms of the retirement system, as set forth by the Retirement Code, are deemed to be contractually binding on the Commonwealth, "[n]o provision in the [Retirement Code] indicates that the legislature intended that [SERB] ... is to be liable for interest except ... as a benefit of successful management and investment of the fund portfolio during the period before retirement when the employee is accumulating a stake in the fund." *Id.* at 302, 479 A.2d at 472. In fact, *Cianfrani II* notes that section 5102 of the Retirement Code, 71 Pa.C.S. § 5102, terminates SERB's obligation to credit statutory interest to a vested member such as the claimant upon the effective date of the member's retirement. Because the claimant's claim for interest related to a period commencing after his date of retirement, the contractual interest requirements of the Retirement Code did not support his claim. Accordingly, *Cianfrani II* held that the period during which SERB withheld payment of the claimant's retirement benefits was "expressly beyond the Commonwealth's statutory and contractual duty, under the Retirement Code, to pay interest." *Id.* at 303, 479 A.2d at 472.

Equally applicable here, *Cianfrani II* conclusively answers in the negative the threshold question of whether SERB is under either a statutory or contractual obligation to pay Claimants interest. As in *Cianfrani II*, Claimants' claims for interest here relate to a period commencing after their respective dates of retirement, from the time SERB originally denied their retirement benefits until the time the supreme court reversed that denial and ordered their benefits reinstated. Pursuant to *Cianfrani II*, therefore, the period during which SERB withheld payment of Claimants' retirement benefits is expressly beyond the Commonwealth's statutory and contractual duty, under the Retirement Code, to pay interest.

Because no obligation arises under either statute or contract, we must next determine whether SERB is under an independent obligation, by virtue of the common law of this Commonwealth, to pay Claimants interest on their withheld benefits. We believe that it is.

■ It is well-recognized under Pennsylvania common law that interest is as much a part of substantive debt as principal. *See, e.g., McDowell National Bank of Sharon v. Vasconi,* 407 Pa. 233, 178 A.2d 589 (1962). As such, it is impliedly payable as compensation to a creditor for delay of payment by the debtor whenever a liquidated, or fixed, sum of money is unjustly withheld. *Nagle Engine & Boiler Works v. City of Erie,* 350 Pa. 158, 38 A.2d 225 (1944); *Carbondale City School District v. Fidelity & Deposit Co. of Maryland,* 346 Pa. 491, 31 A.2d 279 (1943). In other words, interest is a form of damages allowed, in the absence of any express contract, when payment is withheld after it has become the duty of the debtor to discharge the debt. *Id.*

■ Under this definition, there are two prerequisites to the running of interest: the debt must have been liquidated with some degree of certainty, and the duty to pay it must have become fixed. *Id.* Once these prerequisites are met, any failure by the

---

to, any crime related to public office or employment.

**10.** In *Cianfrani I*, the claimant, a former Commonwealth employee, brought suit against SERB, challenging SERB's denial of his retirement benefits pursuant to Act 140. Specifically, the claimant attacked the constitutionality of Act 140, alleging that retroactive application of Act 140 so as to deny him retirement benefits which

had vested prior to July 8, 1978, the effective date of the Act, effected an unconstitutional impairment of contractual obligations. The supreme court agreed, holding that Act 140 was unconstitutional as applied to the claimant, and, thus, affirmed this court's decision directing SERB to repay to the claimant all accumulated benefits withheld by SERB.

debtor to timely discharge the principal of the debt at the time fixed for payment will be considered a wrongful withholding of the sum due, warranting an award of interest at the legal rate from the date the money was due and payable. *Cianfrani II; Nagle Engine.* Where one of these prerequisites has not been met, however, any delay in discharging the debt cannot be considered wrongful for purposes of imposing interest.[11]

■ Here, as in *Cianfrani II,* there is no question that the debt owing to each Claimant was liquidated with some degree of certainty at the time of their retirement. The issue, thus, becomes whether SERB's duty, as debtor, to pay those debts had become fixed at that same time. With respect to this issue, the claimant in *Cianfrani II,* much like Claimants here, characterized SERB's debt to him as fixed and enforceable, contending, therefore, that SERB's withholding of his retirement and pension benefits was "wrongful." However, *Cianfrani II* rejected the claimant's argument, maintaining that, although the supreme court subsequently declared Act 140 unconstitutional, the actual existence of the act prior to that declaration was an operative fact of consequence which prevented characterization of SERB's debt to the claimant as enforceable; in fact, it was not until the supreme court judicially declared Act 140 unconstitutional in *Cianfrani I* that SERB's duty to pay the debt *became* fixed and enforceable.[12] Accordingly, *Cianfrani II* held that:

> [B]ecause [SERB's] action arose from compliance with the legislative mandate of Act 140 and its apparent applicability to [the claimant] and others similarly situated, the interest claim cannot be said to arise from any wrongful delay in payment of a sum owed [the claimant] or from any position of

*enforceable* liability in [SERB]. [SERB's] action was neither wrongful at the outset, nor in retrospect.

*Id.* at 301, 479 A.2d at 471–72 (emphasis in original).

Although SERB argues, both in its opinion and now on appeal, that *Cianfrani II* is "exactly on point," (SERB's op. at 18), and, thus, is "controlling" again with respect to the second issue, (SERB's brief at 22), we agree with Claimants that *Cianfrani II* is distinguishable from the case *sub judice* in several important respects. In *Cianfrani II,* a statute was in existence at the time the claimant requested, and SERB denied, his retirement benefits which clearly mandated that any public employee within the ambit of the act was not to receive an annuity but was to be repaid in a lump sum only the contributions the employee made during active service. *See* Act 140. From the date of enactment of the statute, SERB was without authority to pay retirement and pension benefits to the claimant other than that which the statute authorized. Thus, SERB's action in withholding the claimant's monthly annuity was "not only then lawful, but was affirmatively required by the legislative mandate of Act 140." *Id.* at 301, 479 A.2d at 471. At the time Claimants here requested, and SERB denied, their retirement benefits, however, there was no statute in existence which mandated or affirmatively required such denial.[13] In fact, just the opposite, there was a statute in existence, i.e. the Retirement Code, which affirmatively required SERB to *grant* Claimants' retirement and pension benefits; as recognized by the supreme court in *Glancey,* no then-existing statute or law contained a contrary mandate.[14] Thus, SERB's action in withholding Claimants' retirement and pension benefits

---

11. As noted in *Cianfrani II,* "[t]he underlying rationale supporting an award of interest on a contractual claim has long been that interest constitutes payment of damages for wrongful delay in meeting a liquidated liability arising from an established duty to pay." *Id.* at 299, 479 A.2d at 470.

12. Thus, *Cianfrani II* concluded that it was "only by opinion and order of [the supreme court], holding Act 140 unconstitutional as applied to [the claimant], that payment of withheld benefits was required and an *enforceable* debt was estab-

lished." *Id.* at 301, 479 A.2d at 471 (emphasis in original).

13. Apparently, Act 140 was inapplicable to Claimants; in any case, it was never offered as a justification for SERB's denial of Claimants' benefits.

14. *Glancey* notes that "the language of Article V, Section 16(b) of the Pennsylvania Constitution is conspicuously silent on matters dealing with pension forfeiture," *Id.* at 501–02, 610 A.2d at 26,

was *not*, as in *Cianfrani II*, then lawful or affirmatively required by the legislative mandate of Article V, Section 16(b) of the Pennsylvania Constitution.[15]

Herein lies the primary distinction between *Cianfrani II* and the case *sub judice*.[16]

---

wisely leaving "the *distinct issue* of pension forfeiture to the legislative branch." *Id.* (emphasis in original).

We note, however, that, shortly after the *Glancey* decision, the legislature amended Article V, Section 16(b) to clearly include pension forfeiture as a consequence of judicial misconduct. Section 16(b) now reads, in pertinent part, as follows:

> Except as provided by law, no salary, retirement benefit or other compensation, present or deferred, shall be paid to any justice, judge or justice of the peace who, under section 18 or under Article VI, is suspended, removed or barred from holding judicial office for conviction of a felony or misconduct in office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute.

15. *Glancey* makes it clear that it was not changing the state of the law as it existed at the time of SERB's decision to withhold Claimants' benefits, but, rather, was maintaining and restoring the status quo by reversing the erroneous statutory interpretation propounded by SERB. Indeed, *Glancey* expresses concern that it was SERB's erroneous interpretation that threatened to effect a change in the existing law:

> Respondent SERB, in effect, would have us draft a code of pension forfeiture law and append it to Section 16(b), allowing that Board to write its own rules based (ironically) upon the procedures already established under the Pension Forfeiture Act. It would have us construct a rule that a judge may receive a return of his or her past pension contributions, as is authorized under Section 1313(a) of the Pension Forfeiture Act, while SERB would be authorized to permanently withhold the balance. But under what Constitutional authority? . . . . The reason the Framers of Section 16(b) did not deal with these critical contractual issues was not due to inartfulness, but because Section 16(b) had nothing to do with pension benefits.

*Id.* at 499, 610 A.2d at 24–25. We must disagree, therefore, with SERB's argument in its brief that "its obligation to pay the benefits, in light of the law at the time of the forfeiture, did not arise until after the Pennsylvania Supreme Court reached a decision in the *Glancey* case." (SERB's brief at 25.) SERB's obligation always existed; *Glancey* merely affirmed the existence of that obligation.

Although SERB recognizes in footnote 6 of its brief that "[t]his is not the place to relitigate *Glancey*," (SERB's brief at 23), it spends a great

---

Because of Act 140, no right to the principal amount of SERB's debt, and, therefore, no enforceable duty to pay such amount, existed in *Cianfrani II* until the supreme court ruled the act unconstitutional as applied to the claimant. "Thus, under the usual contract

---

deal of time arguing the reasonableness and good faith of its contrary and erroneous interpretation. However, the common law rule requiring that a debtor pay interest on a debt "wrongfully" withheld does not require that the withholding be the result of unreasonable conduct or bad faith in order to justify an award of interest. *See, e.g., Atlin v. Security-Connecticut Life Insurance Co.*, 788 F.2d 139, 141 (3rd Cir.1986)(noting that "[t]he state courts have not imposed a prerequisite for bad faith or blame worthy conduct; rather, the triggering factor is the failure to pay money when it is due."). The rule, based on the theory that interest represents compensation for the loss of use of money, is restitutionary, rather than punitive in nature, *Id.*; it rests upon the principle that "a plaintiff wrongfully deprived of a sum of money is not made whole unless the delay in recovery is accounted for." *American Enka Co. v. Wicaco Machine Corp.*, 686 F.2d 1050, 1056 (3rd Cir.1982). Thus, the issue of good faith is irrelevant to a determination of whether a debtor wrongfully withheld payment of a debt so as to require an award of interest:

> The fact that the defendant in good faith denies the existence of the debt or other duty asserted by the plaintiff, or denies that he has committed any breach of contract, does not prevent the allowance of interest as damages for his breach.

*Penneys v. Pennsylvania Railroad Co.*, 408 Pa. 276, 279, 183 A.2d 544, 546 (1962). Even assuming SERB acted reasonably and in good faith, therefore, it is still liable for wrongfully withholding Claimants' retirement and pension benefits based on its erroneous interpretation of Article V, Section 16(b).

16. Simply put, in *Cianfrani II*, SERB complied with the law; here, SERB ignored the law. In *Cianfrani II*, SERB acted as required by legislative mandate; here, SERB acted *contrary* to legislative mandate. In *Cianfrani II*, SERB acted pursuant to a proper construction of a statute subsequently adjudged unconstitutional; here, SERB acted pursuant to an *erroneous* construction of a constitutional provision subsequently adjudged inapplicable. We believe, as did the hearing examiner, that the foregoing distinctions are not only of legal significance, but are also determinative of the ultimate issue, i.e. whether Pennsylvania common law imposes an obligation on SERB to award Claimants interest here, inasmuch as SERB's actions in withholding Claimants' retirement benefits here can be characterized as "wrongful."

rule, prejudgment interest was not due because no principal amount had become payable until the statute was voided." *Atlin v. Security–Connecticut Life Insurance Co.,* 788 F.2d 139, 141 (3rd Cir.1986). Here, on the other hand, the right to the principal amount of SERB's debt, and, therefore, an enforceable duty to pay such amount, existed upon the effective date of each Claimant's retirement as a vested member of SERS. Thus, in contrast to *Cianfrani II,* interest is due here under the usual contract rule because SERB withheld payment of the principal amount after it had become payable.

As previously discussed, "awardability of interest as damages for delay rests upon the capability of characterizing the actions of the party so charged as wrongful." *Cianfrani II,* 505 Pa. at 300, 479 A.2d at 471. Because Claimants' retirement and pension benefits constitute both liquidated and enforceable debts, unlike in *Cianfrani II,* we believe that SERB's failure to pay those debts when they became due may properly be characterized as a wrongful withholding of Claimants' benefits. Accordingly, Claimants' petition for interest presents a cognizable claim under the common law, which imposes a duty upon SERB here to pay interest as damages for delay in discharging its debt.

For the foregoing reasons, we hold that, as a matter of right,[17] Claimants here are entitled to an award of interest at the legal rate from the date the money was due and payable. Accordingly, we reverse SERB's order denying Claimants' request for interest on retirement benefits withheld by SERB and remand this case to SERB for a determination of the legal rate of interest due and

owing to each Claimant in accordance with this decision.[18]

### ORDER

AND NOW, this 12th day of September, 1996, we reverse the order of the Commonwealth of Pennsylvania, State Employes' Retirement Board, dated December 22, 1995, and remand this case to the Board for a determination of the legal rate of interest due and owing to each Claimant.

Jurisdiction relinquished.

---

**17.** The longstanding rule in this Commonwealth is that "the right to interest upon money owing upon contract depends not on discretion, but upon legal right." *West Republic Mining Co. v. Jones & Laughlins,* 108 Pa. 55, 68 (1885); *see also Nagle Engine & Boiler Works v. Erie,* 350 Pa. 158, 165, 38 A.2d 225, 227 (1944) (noting that "[a] liquidated claim carries interest with it as of legal right, from the time the debt becomes due."); *Palmgreen v. Palmer's Garage,* 383 Pa. 105, 108, 117 A.2d 721, 722 (1955)(noting that "allowance of … interest does not depend upon discretion but is a legal right.").

**18.** Because it is not yet ripe for our review, we decline to address Claimants' argument that they are entitled to an award of costs and counsel fees

under the act commonly referred to as the Costs Act, Act of December 31, 1982, P.L. 1127, *as amended,* 71 P.S. §§ 2031–2035. Claimants must first submit an application for such an award to the adjudicative officer, and a copy to SERB, within thirty days after this court's order in accordance with the requirements of section 3 of the Costs Act, 71 P.S. § 2033(b). The adjudicative officer must then make a finding of what fees and expenses are to be awarded, if any, within thirty days of receipt of the application. 71 P.S. § 2033(c). Only upon the granting of a petition for leave to appeal from the adjudicative officer's fee determination would we review the issue of costs and counsel fees.