**Louise HUTCHINSON, Petitioner,**

v.

**PENNSYLVANIA STATE EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 15, 1999.

Decided Aug. 6, 1999.

Reargument Denied Oct. 15, 1999.

Steven E. Grubb, Harrisburg, for petitioner.

Larry T. Brandenburg, Harrisburg, for respondent.

Before SMITH, J., FRIEDMAN, J., and KELLEY, J.

KELLEY, Judge.

Louise Hutchinson (Claimant) appeals from the order of the Pennsylvania State Employes' Retirement Board (SERB) granting in part her request for interest on the death benefit payable from her husband's retirement account, but denying her request for attorney's fees. We affirm.

The Honorable William D. Hutchinson became a member of the State Employes' Retirement System (SERS) on December 1, 1972 by virtue of his election to the Pennsylvania General Assembly. Effective January 4, 1982, Representative Hutchinson became an employee of the Administrative Office of Pennsylvania Courts (AOPC) by virtue of his election to the Pennsylvania Supreme Court. On October 17, 1987, Mr. Justice Hutchinson terminated his service with the AOPC when he was appointed as Judge to the United States Court of Appeals for the Third Circuit.

On November 12, 1987, Judge Hutchinson completed a SERS Nomination of Beneficiaries form naming Claimant, his wife, as his principal beneficiary. On November 23, 1987, Judge Hutchinson completed an Application for Retirement Allowance, electing to withdraw his accumulated deductions in a lump sum and to receive a monthly annuity. On October 8, 1995, Judge Hutchinson died.

On October 31, 1995, Claimant contacted SERS to inquire regarding the death benefit that was payable to her due to her status as Judge Hutchinson's principal beneficiary. An employee in the SERS Benefits Administration Division informed Claimant that the payment of the death benefit would be delayed due to problems with the SERS computer system.[1]

---

1. SERS was experiencing problems with its newly installed computer system, the State Employes' Retirement Information System (SERIS). SERIS was scheduled to become operational in September of 1995, but SERS was still experiencing problems with the cal-

By letter dated November 7, 1995, SERS acknowledged Judge Hutchinson's death and requested that Claimant provide SERS with certain information so that it could begin processing the death benefit payable from her husband's retirement account. However, SERS continued to experience problems with its computer system and was unable to proceed further toward the payment of benefits to Claimant. On November 17, 1995, SERS received the requested information from Claimant.

Under normal circumstances, SERS would have mailed Claimant an Act 500 letter informing her of her payment options within three weeks. However, SERS did not mail Claimant the Act 500 letter until February 6, 1996 because of the computer problems. In that letter, SERS informed Claimant that she was entitled to a total death benefit of $644,976.57 and requested that she select a payment plan. The letter also required her to sign a release which conditioned the payment of her benefit on her release of all future claims against SERS.

On May 10, 1996, Claimant, through her attorney, requested payment of the death benefit including the interest that had accrued during SERS' delay in making payment. Claimant's attorney noted that she refused to sign that portion of the release that conditioned the payment of the death benefit on the relinquishment of her right to interest.

On May 13, 1996, SERS received the completed death benefit information from Claimant. Claimant elected to receive a single, lump sum payment of the death benefit. She also submitted the release; however, she modified the release to exclude release of her claim for interest on the death benefit. On May 31, 1996, SERS mailed the death benefit payment to Claimant in the amount of $644,976.57, which included no interest.

On December 2, 1996, Claimant, through her attorney, sent a letter to SERS seeking the payment of legal interest [2] on the death benefit for the period of delay by SERS in processing her claim. By letter dated January 10, 1997, SERS denied her request for legal interest. On January 31, 1997, Claimant filed an appeal of SERS' refusal to pay interest with the SERS Appeals Committee. On April 11, 1997, the Appeals Committee again denied Claimant's request for legal interest on the death benefits. By letter dated May 6, 1997, Claimant appealed this decision to SERB.

Pursuant to the regulations regarding the General Rules of Administrative Practice and Procedure, 1 Pa.Code § 35.155 [3], SERS and Claimant agreed to submit the appeal to SERB on stipulated facts and exhibits. On September 16, 1997, the parties submitted the stipulated facts and exhibits to a hearing examiner.

On February 12, 1998, following the submission of briefs by the parties, the hearing examiner issued an opinion with a recommendation regarding the disposition of the appeal. In the opinion the hearing examiner found that there was a delay of 81 days, from November 17, 1995 to February 6, 1996, in the mailing of the Act 500

culation of death benefits at the time of Judge Hutchinson's death on October 8 [th].

2. Section 202 of the Act of January 30, 1974, P.L. 13, 41 P.S. § 202, provides:

Reference in any law or document enacted or executed heretofore or hereafter to "legal rate of interest" and reference in any document to an obligation to pay a sum of money "with interest" without specification of the applicable rate shall be construed to refer to the rate of interest of six percent per annum.

3. Section 35.155 of the regulations states:

Independently of the orders or rulings issued as provided by § 35.112 (relating to conferences to expedite hearings) the participants may stipulate as to a relevant matter of fact or the authenticity of relevant documents. The stipulations may be received in evidence at a hearing, and when so received shall be binding on the participants with respect to the matters therein stipulated.

1 Pa.Code § 35.155.

letter to Claimant due to SERS' computer problems. Once Claimant responded to the Act 500 letter and supplied the necessary information concerning her selection of a payment plan, SERS took an additional 18 days, from May 13, 1996 to May 31, 1996, to mail the death benefit to Claimant. Thus, the hearing examiner determined that it took SERS 99 days to process the payment of Claimant's death benefits.[4]

The hearing examiner noted that neither the State Employees' Retirement Code (Retirement Code)[5] nor the associated regulations[6] imposes a time limit under which SERS must pay death benefits to the beneficiary of an annuitant in the retirement system. The hearing examiner determined that because no specific time limit could be found, the law would impose a requirement that SERS make payment within a reasonable amount of time. The hearing examiner noted that, pursuant to section 5905(g) of the Retirement Code[7], SERS is required to pay the first death benefit to the beneficiary of an active member within 60 days of receipt of certification of his death and other necessary data. Although the instant case did not involve the death of an active member, as that term is defined in the Retirement Code, the hearing examiner determined that it would be reasonable to impose the same duty on SERS to make the first payment of death benefits to beneficiaries of non-active members within 60 days of receipt of certification of death and other necessary data.

Based on the foregoing, the hearing examiner reduced the 99-day delay attributable to SERS by the 60 days provided for in the Retirement Code. As a result, the hearing examiner recommended that Claimant be awarded interest at the legal rate for the 39-day delay attributable to SERS, and that Claimant's request for attorney's fees be denied.

Both Claimant and SERS filed exceptions to the hearing officer's recommendations with SERB. On October 20, 1998, SERB issued an order and opinion accepting and adopting the opinion and recommendation of the hearing examiner.[8] Claimant then filed the instant appeal in this Court.

In this appeal, Claimant contends: (1) SERB erred in affirming the award of interest at the legal rate for a period of 39 days rather than for a period of 235 days; and (2) SERB erred in failing to award her attorney's fees pursuant to the Act of December 13, 1982, P.L. 1127, *as amended*, 71 P.S. §§ 2031–2035 (Costs Act).

▆ We initially note that our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Roche v. State Employes' Retirement Board*, 731 A.2d 640 (Pa.Cmwlth.1999).

Claimant first asserts that SERB erred in affirming the award of interest at the

---

4. The hearing examiner also found that a total of 192 days elapsed from November 17, 1995, when SERS received information that was necessary to begin processing the death benefits payment, to May 31, 1996, when SERS actually mailed the payment to Claimant. However, it took Claimant 93 days, from February 6, 1996 to May 13, 1996, to respond to the Act 500 letter, a delay that cannot be attributed to SERS. Therefore, the hearing examiner determined that the delay that is attributable to SERS is 99 days.

5. 71 Pa.C.S. §§ 5101–5956.

6. The regulations relating to SERB are found at 4 Pa.Code §§ 241.1–250.15.

7. 71 Pa.C.S. § 5905(g).

8. SERB modified the hearing examiner's opinion in one respect. In the findings of fact, the hearing examiner found that SERS denied Claimant's request for interest in a letter dated January 17, 1997. However, SERB corrected this finding as SERS had denied Claimant's request in a letter dated January 10, 1997.

legal rate for a period of 39 days rather than for a period of 235 days, the period of time from her husband's death on October 8, 1995 to when SERS made the lump sum payment of death benefits on May 31, 1996. In support of this claim, Claimant relies on our opinion in *Braig v. Pennsylvania State Employes' Retirement Board,* 682 A.2d 881 (Pa.Cmwlth.1996). In particular, Claimant contends that *Braig* supports the proposition that interest accrued from the date of Judge Hutchinson's death because that is the date on which the death benefits became due and payable. However, we disagree that such a conclusion is compelled by our opinion in *Braig.*

In *Braig,* SERS withheld the retirement benefits owed to judges who had resigned or had been removed from the bench. In that case, each of the judges had submitted to SERS an Application for Retirement Allowance, thereby electing the manner in which the accrued retirement benefits should be disbursed by SERS. *Id.,* 682 A.2d at 882, 883, 884. Thus, at the time SERS withheld payment of these benefits, the judges had notified SERS of their intention to receive their accrued retirement benefits as vested members of SERS, and the judges indicated their preference as to the method by which these accrued benefits were to be disbursed. *Id.*

After SERB ultimately disbursed the accrued allowances, the judges requested that they be awarded legal interest from the time of filing for their retirement allowances until the time that these allowances were ultimately disbursed by SERB. *Id.* at 885. When SERB reversed a hearing examiner's determination that the judges were entitled to such interest, the judges appealed SERB's determination in this Court. *Id.*

On appeal, this Court initially considered whether SERB was under either a statutory or contractual obligation to pay the Claimants interest on the retirement allowances that had been withheld by SERB. *Id.* In this regard, we noted that the statutory terms of the Retirement Code are deemed to be contractually binding on the Commonwealth. *Id.* at 886 *citing Cianfrani v. State Employees' Retirement Board,* 505 Pa. 294, 479 A.2d 468 (1984).[9] However, we also noted that there is no indication from the provisions of the Retirement Code that SERB " '[i]s to be liable for interest except . . . as a benefit of successful management and investment of the fund portfolio during the period before retirement when the employee is accumulating a stake in the fund.' " *Id. quoting Cianfrani,* 505 Pa. at 302, 479 A.2d at 472. In fact, we noted that section 5102 of the Retirement Code[10] terminates

---

**9.** In *Cianfrani,* a retiree appealed our dismissal of his class action suit in which he sought, *inter alia,* interest on retirement benefits that had been withheld by SERB pursuant to a statute that was found to be unconstitutional as applied to him in a prior lawsuit. *Id.* at 296–297, 479 A.2d at 469–470. On appeal, the Pennsylvania Supreme Court determined that at the time SERB withheld the benefits in that case, its actions were not only lawful, but also affirmatively required under the provisions of the statute that was later deemed to be unconstitutional. *Id.* at 299–301, 479 A.2d at 470–472. Because SERB did not wrongfully withhold the payment of the benefits at the time they were withheld, the retiree was not entitled to the award of interest on the benefits as compensatory damages. *Id.* In addition, the court determined that because SERB was not mandated by either statute or contract to pay interest after his date of retire-

ment, the suit was properly dismissed. *Id.* at 301–303, 479 A.2d at 472–473.

**10.** 71 Pa.C.S. § 5102. In particular, section 5102 defines "regular accumulated deductions", in pertinent part, as follows:

[T]he total of the regular or joint coverage member contributions paid into the fund on account of current service or previous State or creditable nonstate service, together with the statutory interest credited thereon until the date of termination of service. *In the case of a vestee or a special vestee, statutory interest shall be credited until the effective date of retirement . . .*

*Id.* (emphasis added).

In addition, section 5102 defines "additional accumulated deductions", in pertinent part, as follows:

[T]he total of the additional member contributions paid into the fund on account of .

SERB's obligation to credit interest to a vested member upon the effective date of the member's retirement. *Id. citing Cianfrani.* Because the Claimants' claim for interest on withheld benefits related to a period commencing after their respective dates of retirement, we concluded that "[p]ursuant to [*Cianfrani*], therefore, the period during which SERB withheld payment of Claimants' retirement benefits is expressly beyond the Commonwealth's statutory and contractual duty, under the Retirement Code, to pay interest." *Id.*

We then examined whether the judges were entitled to interest on the withheld funds under the Pennsylvania common law. In making this determination we noted that:

> It is well-recognized under Pennsylvania common law that interest is as much a part of substantive debt as principal. As such, it is impliedly payable as compensation to a creditor for delay of payment by the debtor whenever a liquidated, or fixed, sum of

money is unjustly withheld. In other words, interest is a form of damages allowed, in the absence of any express contract, when payment is withheld after it has become the duty of the debtor to discharge the debt.

> Under this definition, there are two prerequisites to the running of interest: the debt must have been liquidated with some degree of certainty, and the duty to pay it must have become fixed. Once these prerequisites are met, any failure by the debtor to timely discharge the principal of the debt at the time fixed for payment will be considered a wrongful withholding of the sum due, warranting an award of interest at the legal rate from the date the money was due and payable. Where one of these prerequisites has not been met, however, any delay in discharging the debt cannot be considered wrongful for purposes of imposing interest.

*Id.* at 886–887 (citations and footnote omitted).[11]

current service or previous State or creditable nonstate service, together with the statutory interest credited thereon until the date of termination of service. *In the case of a vestee, statutory interest shall be credited until the effective date of retirement* . . . *Id.* (emphasis added).

Moreover, section 5102 defines "social security integration accumulated deductions", in pertinent part, as:

[T]he total of the member contributions paid into the fund on account of social security integration credit, together with the statutory interest credited thereon until the date of termination of service or until the date of withdrawal thereof, whichever is earlier. *In the case of a vestee statutory interest shall be credited until the effective date of retirement* . . . *Id.* (emphasis added).

Finally, section 5102 defines "total accumulated deductions", in pertinent part, as follows:

[T]he sum of the regular accumulated deductions, additional accumulated deductions, the social security integration accumulated deductions, and all other contributions paid into the fund for the purchase of credit for service or other coverage together with all statutory inter-

est credited thereon until the date of termination of service. *In the case of a vestee or a special vestee, statutory interest shall be credited until the effective date of retirement* . . . *Id.* (emphasis added). Thus, based on these explicit provisions of the Retirement Code, it is clear that SERB has no contractual or statutory duty to credit interest to a vested member's account upon the date of the member's retirement. *Cianfrani.*

**11.** *See also, Somerset Community Hospital v. Allan B. Mitchell & Associates, Inc.*, 454 Pa.Super. 188, 685 A.2d 141, 148 (1996) ("It is well established that in contract cases, prejudgment interest is awardable as of right. Our courts have generally regarded the award of prejudgment interest as not only a legal right, but also as an equitable remedy awarded to the injured party at the discretion of the trial court. 'In claims that arise out of a contractual right, interest has been allowed at the legal rate from the date that payment was *wrongfully* withheld, where the damages are liquidated and certain, and the interest is readily ascertainable through computation.' The basic premise underlying the award of prejudgment interest to a party centers upon the fact that the breaching party has deprived the injured party of using interest accrued on

In examining whether the two prerequisites were present in *Braig*, we noted, relative to the first of the two, that there was no question that the debt owing to each of the judges was liquidated with some degree of certainty at the time of their retirement. *Id.* at 887. Regarding the second of the prerequisites, we likewise noted that, at the time the payments were withheld by SERB, "[t]here was a statute in existence, i.e. the Retirement Code, which affirmatively required SERB to *grant* Claimants' retirement and pension benefits." *Id.* (emphasis in original).

Because the debt owed to the Claimants was liquidated with a degree of certainty at the time SERB withheld the retirement benefits, and because the Claimants were entitled to receive these benefits under the provisions of the Retirement Code, we properly concluded that:

> [T]he right to the principal amount of SERB's debt, and, therefore, an enforceable duty to pay such amount, existed upon the effective date of each Claimant's retirement as a vested member of SERS. Thus, ... interest is due here under the usual contract rule because

SERB withheld payment of the principal amount after it had become payable. [B]ecause Claimants' retirement and pension benefits constitute both liquidated and enforceable debts, ... we believe that SERB's failure to pay those debts when they became due may properly be characterized as a wrongful withholding of Claimants' benefits. Accordingly, Claimants' petition for interest presents a cognizable claim under the common law, which imposes a duty upon SERB here to pay interest as damages for delay in discharging its debt.

*Id.* at 889.[12, 13]

■ Thus, pursuant to *Cianfrani*, *Braig*, and the explicit provisions of section 5102 of the Retirement Code, SERB was not under either a statutory or contractual duty to pay interest on the death benefits due to Claimant in this case. As a result, pursuant to *Braig*, we must examine whether SERB is under an independent obligation, by virtue of the common law, to pay Claimant legal interest on the withholding of her death benefits. In this regard, we must determine whether the two prerequisites to the running of legal interest are present in this case, i.e.,

money which was rightfully due and owing to the injured party.") (citations omitted and emphasis in original); RESTATEMENT (SECOND) OF CONTRACTS § 354, § 354 cmt. b (1981):

> § 354. Interest as Damages
>   (1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.
>   (2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due ...
>   b. Performance must be due. Interest is not payable as damages for non-performance until performance is due ...

**12.** *See also Mauch v. Pension Board of the City of Pittsburgh*, 383 Pa. 448, 119 A.2d 193 (1956) (Where municipality unjustly refused to pay pension to employee until required to do so by court decision, employee could re-

cover principal and interest on each monthly pension payment as it became due until the date of payment.)

**13.** In general, with regard to the award of interest, the Pennsylvania Supreme Court has noted:

> An examination of the cases dealing with the charge and allowance of interest will disclose many difficulties, but the decided trend of courts of law and courts of equity has been 'to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case' * * * Unless a case be found, which is a conclusive precedent, the safest and at the same time the fairest way for a court to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing.

*Murray Hill Estates, Inc. v. Bastin*, 442 Pa. 405, 410, 276 A.2d 542, 545 (1971), *quoting, McDermott v. McDermott*, 130 Pa.Super. 127, 196 A. 889 (1938).

whether the debt owed Claimant was liquidated with some degree of certainty, and whether SERB withheld payment after its duty to pay the debt had become fixed.

As in *Braig*, in this case it is undisputed that the debt owing to Claimant was liquidated with some degree of certainty at the time of Judge Hutchinson's death. Indeed, it is conceded that the calculation of benefits is based upon the date of Judge Hutchinson's death. Therefore, we must now determine at what time SERB's duty to pay the death benefits to Claimant became fixed under the terms of the contract, i.e., the Retirement Code.[14]

Section 5905(g) of the Retirement Code states, in pertinent part:

(g) **Death benefits.**—Upon receipt of notification from the head of department of the death of an active member [15, 16] or a member on leave without pay, the board shall advise the designated beneficiary [17] of the benefits to which he is entitled, and shall make the first payment to the beneficiary within 60 days of receipt of certification of death and other necessary data . . .

71 Pa.C.S. § 5905(g).[18] Thus, under the terms of the contract, the head of depart-

14. In this regard, Claimant contends that *Braig* requires us to find that SERB's duty became fixed at the time of Judge Hutchinson's death. If this were a case in which a vested member of SERS brought a claim for interest from the date of his retirement, we would agree that *Braig* would be controlling. However, the instant matter involves a claim by a beneficiary for *death benefits* resulting from the death of a former active member of SERS. Therefore, the holding in *Braig* relating to the payment of *retirement benefits* is clearly inapposite, and does not control the outcome of this case. The provisions of the contract, i.e., the Retirement Code, relating to the payment of retirement benefits, as opposed to death benefits, are quite distinct. *Compare, e.g.*, 71 Pa.C.S. §§ 5308(a), 5308(b), 5309, 5311, 5701, 5702, 5705(a), 5905(f), 5905.1 (relating to the eligibility for, and the form and payment of, retirement benefits) and 71 Pa.C.S. §§ 5310, 5707(a), 5707(b), 5709(b), 5905(g) (relating to the eligibility for, and the form and payment of, death benefits). Thus, the language of the Retirement Code relating to the payment of death benefits to a beneficiary controls the outcome of the instant appeal. *See, e.g., Hazleton Area School District v. Bosak*, 671 A.2d 277 (Pa.Cmwlth.1996) (The language of a contract should be construed with the intent of the parties as the paramount consideration; to determine the intent of the parties, a court should look to the four corners of the document and its express language.)

15. Section 5102 of Retirement Code defines an "active member" as "[a] State employee, or a member on leave without pay, for whom pickup contributions are being made to the fund or for whom such contributions otherwise required for current State service are not being made solely by reason of any provisions of this part relating to the limitation under section 401(a)(17) of the Internal Revenue Code of 1986 . . ." 71 Pa.C.S. § 5102.

16. *See* section 5906(a)(3)(i) of the Retirement Code which requires the head of department to notify SERB of the death of an active member. This section states:

(a) **Status of members.**—The head of department shall, at the end of each pay period, notify the board in a manner prescribed by the board of salary changes effective during that period for any members of the department, the date of all removals from the payroll, and the type of leave of any members of the department who have been removed from the payroll for any time during that period, and . . .

(3) if the removal is due to termination of state service, he shall furnish the board with a complete State service record, including service in other departments or agencies, or creditable nonstate service and;

(i) in the case of death of the member the head of the department shall so notify the board . . .

71 Pa.C.S. § 5906(a)(3)(i).

17. Section 5102 of the Retirement Code defines "beneficiary" as "[t]he person or persons last designated in writing to the board by a member to receive his accumulated deductions or a lump sum benefit upon the death of such member." 71 Pa.C.S. § 5102.

18. *See also* section 249.5(b) of the regulations relating to SERB which states:

(b) *Time for payments.* Pursuant to section 5905(g) of the [Retirement Code] (relating to duties of the board regarding applications and elections of members), in the case of the death of an active member or

ment is required to notify SERB of the death of an active member, and SERB's duty to pay death benefits to the designated beneficiary of an active member becomes fixed after the notification of death, and within 60 days of its receipt of certification of the member's death and other necessary data. *Id.*[19]

However, in this case Judge Hutchinson was not an active member at the time of his death. When Judge Hutchinson terminated his service with AOPC effective October 19, 1987, by virtue of his appointment to the Court of Appeals for the Third Circuit, he made an election to receive his retirement benefits pursuant to the provisions of section 5705(a) of the Retirement Code.[20] Thus, as noted by the parties in this case, the provisions of section 5905(g) do not apply as Judge Hutchinson was an

one on leave without pay, the Board will pay the benefits to which those members would be entitled to the designated beneficiary or the legally constituted representative, as the case may be, not more than 60 days after all necessary data is both received from the department and the selection of the benefit is made by such beneficiary or legally constituted representative. 4 Pa.Code § 249.5(b).

19. With regard to the form of the payment of death benefits, section 5709(b) of the Retirement Code provides:

(b) **Death benefits.**—If the amount of a death benefit payable to a beneficiary under section 5707 (relating to death benefits) or under the provisions of Option 1 of section 5705(a)(1) (relating to members options) is $5,000 or more, such beneficiary may elect to receive payment according to one of the following options:
(1) a lump sum payment;
(2) an annuity actuarially equivalent to the amount payable; or
(3) a lump sum payment and an annuity such that the annuity is actuarially equivalent to the amount payable less the lump sum payment specified by the beneficiary.
71 Pa.C.S. § 5709(b).

20. Section 5705(a) of the Retirement Code provides, in pertinent part:

(a) **General Rule.**—[A]ny vestee having ten or more eligibility points or any other eligible member upon termination of State service who has not withdrawn his total accumulated deductions as provided in section 5701 ... may apply for and elect to receive either a maximum single life annuity, as calculated in accordance with the provisions of section 5702 ... or a reduced annuity certified by the actuary to be actuarially equivalent to the maximum single life annuity and in accordance with one of the following options ...
(1) **Option 1.**—A life annuity to the member with a guaranteed total payment equal to the present value of the maxi-

mum single life annuity on the effective date of retirement with the provision that, if, at his death, he has received less than such present value, the unpaid balance shall be payable to his beneficiary.
(2) **Option 2.**—A joint and survivor annuity payable during the lifetime of the member with the full amount of such annuity payable thereafter to his survivor annuitant, if living at his death.
(3) **Option 3.**—A joint and fifty percent (50%) survivor annuity payable during the lifetime of the member with one-half of such annuity payable thereafter to his survivor annuitant, if living at his death.
(4) **Option 4.**—Some other benefit which shall be certified by the actuary to be actuarially equivalent to the maximum single life annuity, subject to the following restrictions:
(i) any annuity shall be payable without reduction during the lifetime of the member;
(ii) the sum of all annuities payable to the designated survivor annuitants shall not be greater than one and one-half times the annuity payable to the member; and
(iii) a portion of the benefit may be payable as a lump sum, except that such lump sum payment shall not exceed an amount equal to the total accumulated deductions standing to the credit of the member. The balance of the present value of the maximum single life annuity adjusted in accordance with section 5702(b) shall be paid in the form of an annuity with a guaranteed total payment, a single life annuity, or a joint and survivor annuity or any combination thereof but subject to the restrictions of subparagraphs (i) and (ii) under this option.
71 Pa.C.S. § 5705(a). Pursuant to Judge Hutchinson's election of his retirement benefits, he received an initial payment of $56,824.51, and a monthly annuity payment of $2,720.50. On his death, the unexpended balance of the "present value" of his retirement account was to paid to his designated beneficiary.

annuitant[21] at the time of his death. In addition, as also noted by the parties, the Retirement Code does not specify the time within which SERB is required to pay death benefits to an annuitant beneficiary such as Claimant.

As the Pennsylvania Superior Court has noted, "[i]t is hornbook law that where no time is specified for performance of a contractual obligation, the courts will require that the obligation be performed within a 'reasonable' time." *Hodges v. Pennsylvania Millers Mutual Insurance Company,* 449 Pa.Super. 341, 673 A.2d 973, 974 (1996). *See Field v. Golden Triangle Broadcasting, Inc.,* 451 Pa. 410, 305 A.2d 689 (1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974) (Where no time for performance was provided in the letter agreement of sale of a radio station, the law implied that it shall be done within a reasonable time, depending upon the nature of the business.); *Lefkowitz v. Hummel Furniture Company,* 385 Pa. 244, 122 A.2d 802 (1956) (Where no time for the preparation and submission of plans was provided in a construction contract, the law implied that it shall be done within a reasonable time.); *L.C.S. Colliery, Inc. v. Globe Coal Co.,* 369 Pa. 1, 84 A.2d 776 (1951) (Where the time for a lessor to convey leased premises to a lessee was not specified in the lease agreement, a reasonable time was implied.); *Marshall Construction Company, Inc. v. Forsyth,* 359 Pa. 8, 57 A.2d 902 (1948) (Where the time for settlement was not provided in a contract for the sale of realty, a reasonable time was implied.)[22]

■ Because the Retirement Code is silent as to when SERB's duty to make payment of death benefits to Claimant arose, it is appropriate for this court to supply that omitted term to the contract. *Field; Lefkowitz; L.C.S. Colliery, Inc.; Marshall Construction Company, Inc.; Hodges; Skehan;* RESTATEMENT (SECOND) OF CONTRACTS § 204. Even though death

---

**21.** Section 5102 of the Retirement Code defines an "annuitant" as "[a]ny member on or after the effective date of retirement until his annuity is terminated." 71 Pa.C.S. § 5102.

**22.** *See also Skehan v. Board of Trustees of Bloomsburg State College,* 431 F.Supp. 1379 (1977), *aff'd,* 590 F.2d 470 (3rd Cir.1978) (Under Pennsylvania law, when a contract is silent as to the time of its performance, the requirement of performance within a reasonable time is read into the contract.); *Crawford's Auto Center v. Pennsylvania State Police,* 655 A.2d 1064 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 542 Pa. 651, 666 A.2d 1059 (1995) (A promise by the Pennsylvania State Police to pay the reasonable value for a towing company's services relating to a criminal investigation could be inferred as an essential term of the implied contract of the parties.); RESTATEMENT (SECOND) OF CONTRACTS § 204, § 204 cmt. d (1981):

§ 204. Supplying an Omitted Essential Term

When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court . . .

d. Supplying a term. The process of supplying an omitted term has sometimes been disguised as a literal or a purposive reading of contract language directed to a situation other than the situation that arises. Sometimes it is said that the search is for the term the parties would have agreed to if the question had been brought to their attention. Both the meaning of the words used and the probability that a particular term would have been used if the question had been raised may be factors in determining what term is reasonable in the circumstances. But where there is in fact no agreement, the court should supply a term which comports with community standards of fairness and policy rather than analyze a hypothetical model of the bargaining process. Thus where a contract calls for a single performance such as the rendering of a service or the delivery of goods, the parties are most unlikely to agree explicitly that performance will be rendered within a "reasonable time"; but if no time is specified, a term calling for performance within a reasonable time is supplied. *See* Uniform Commercial Code §§ 1–204, 2–309(1). Similarly, where there is a contract for the sale of goods but nothing is said as to price the price is a reasonable price at the time for delivery. *See* Uniform Commercial Code § 2–305.

benefits are calculated from the date of death, Claimant's assertion that SERB's duty to disburse death benefits to her arose on the date of the annuitant's death is an inappropriate and unreasonable construction of its express or implied terms. As with the provisions of section 5905(g) relating to the payment of death benefits to the beneficiary of an active member, a reasonable construction of the Retirement Code requires that SERB receive notification of the annuitant's death and documentation demonstrating the annuitant beneficiary's entitlement to benefits before its duty to disburse the funds arises. Likewise, as with the provisions of section 5905(g), a reasonable construction of the Retirement Code requires this Court to supply the omitted term that SERB discharge its statutory and contractual duty to disburse these death benefits within a reasonable time. *Field; Lefkowitz; L.C.S. Colliery, Inc.; Marshall Construction Company, Inc.; Hodges; Skehan;* RESTATEMENT (SECOND) OF CONTRACTS § 204.[23]

█ In addition, it would be unreasonable and inequitable to award legal interest to Claimant for the entire period of time from the date of Judge Hutchinson's death to the date payment of death benefits were disbursed by SERB. It cannot be said that SERB wrongfully withheld the benefits due Claimant when its duty to pay the benefits either did not yet arise or was to be performed within a reasonable period of time. *See, e.g., Cianfrani,* 505 Pa. at 300–301, 479 A.2d at 471 ("[A]wardability of interest as damages for delay rests upon the capability of characterizing the actions of the party so charged as wrongful ... In this respect, the Board action cannot be characterized as wrongful and, accordingly, this claim for interest cannot proceed under the common law regarding the award of interest damages."); RESTATEMENT (SECOND) OF CONTRACTS § 354 cmt. b ("Interest is not payable as damages for non-performance until performance is due.") Thus, SERB's award of 39–days' interest is based on a reasonable and proper construction of the contract underlying Claimant's entitlement to death benefits, the Retirement Code, and represents an award based on "[a] plain and simple consideration of justice and fair dealing." *Murray Hill Estates, Inc.,* 442 Pa. at 410, 276 A.2d at 542. In short, SERB committed no error in this regard.

Claimant next contends that SERB erred in failing to award her attorney's

---

**23.** It is important to note that when we discuss a "reasonable" construction of the Retirement Code as a contract, we are not speaking of the reasonableness of the actions of SERB or Claimant under the terms of the contract. Rather, we are merely attempting to effectuate a reasonable construction of the express terms contained in the contract, or to add an omitted term to the contract regarding the time of performance. *See, e.g., CBS, Inc. v. Capital Cities Communications, Inc.,* 301 Pa.Super. 557, 448 A.2d 48 (1982) (A court may not construe a contract in such a manner as to write a new contract for the parties, but is confined to a reasonable construction of the language actually contained in the writing.); *Field; Lefkowitz; L.C.S. Colliery, Inc.; Marshall Construction Company, Inc.; Hodges; Skehan;* RESTATEMENT (SECOND) OF CONTRACTS § 204. Indeed, the reasonableness of either SERB's actions or Claimant's actions under the contract is irrelevant in our consideration of the imposition of interest as damages. As we noted in *Braig:*

> [T]he common law rule requiring that a debtor pay interest on a debt "wrongfully" withheld does not require that the withholding be the result of unreasonable conduct or bad faith in order to justify an award of interest. *See, e.g., Atlin v. Security–Connecticut Life Insurance Co.,* 788 F.2d 139, 141 (3rd Cir.1986) (noting that "[t]he state courts have not imposed a prerequisite for bad faith or blame worthy conduct; rather, the triggering fact is the failure to pay money when it is due.") ... Thus, the issue of good faith is irrelevant to a determination of whether a debtor wrongfully withheld payment of a debt so as to require an award of interest:
>> The fact that the defendant in good faith denies the existence of the debt or other duty asserted by the plaintiff, or denies that he has committed any breach of contract, does not prevent the allowance of interest as damages for his breach.
> *Penneys v. Pennsylvania Railroad Co.,* 408 Pa. 276, 279, 183 A.2d 544, 546 (1962) ...

*Braig,* 682 A.2d at 888, fn. 15.

**18**

fees pursuant to the Costs Act. However, as we stated in *Braig:*

> Because it is not yet ripe for our review, we decline to address Claimants' argument that they are entitled to an award of costs and counsel fees under the act commonly referred to as the Costs Act [24] ... Claimants must first submit an application for such an award to the adjudicative officer, and a copy to SERB, within thirty days after this court's order in accordance with the requirements of section 3 of the Costs Act, 71 P.S. § 2033(b).[25] The adjudicative officer must then make a finding of what fees and expenses are to be awarded, if any, within thirty days of receipt of the application. 71 P.S. § 2033(c).[26] Only upon the granting of a petition for leave to appeal from the adjudicative officer's fee determination would we review the issue of costs and counsel fees.[27]

*Braig*, 682 A.2d at 889, fn. 18. Thus, this claim is not ripe for our review and will not be addressed in this appeal. *Id.*

Accordingly, the order of SERB is affirmed.

24.  Section 3(a) of the Costs Act states:

(a) Except as otherwise provided or prohibited by law, a Commonwealth agency that initiates an adversary adjudication shall award to a prevailing party, other than the Commonwealth, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer finds that the position of the agency, as a party to the proceeding, was substantially justified or that special circumstances made an award unjust.
71 P.S. § 2033(a).

25.  Section 3(b) of the Costs Act states, in pertinent part:

(b) A party seeking an award of fees and expenses shall submit an application for such award to the adjudicative officer and a copy to the Commonwealth agency within 30 days after the final disposition of the adversary adjudication ...
71 P.S. § 2033(b).

26.  Section 3(c) of the Costs Act states:

(c) The adjudicative officer shall make a finding of what fees and expenses to be awarded, if any, within 30 days of receipt of the application and may reduce the amount

*ORDER*

AND NOW, this 6th day of August, 1999, the order of the Pennsylvania State Employes' Retirement Board, dated October 20, 1998 at Docket No. 1997–12, is affirmed.

FRIEDMAN, Judge, dissents.

I respectfully dissent. Because I believe that the Pennsylvania State Employes' Retirement Board (SERB) was required to pay death benefits to Louise Hutchinson (Claimant) upon the death of her husband on October 8, 1995, and because I believe that SERB's withholding of benefits from Claimant until May 31, 1996 was wrongful, I would award interest to Claimant for the entire period between October 8, 1995 and May 31, 1996.

In *Braig v. Pennsylvania State Employes' Retirement Board,* 682 A.2d 881, 889 (Pa.Cmwlth.1996), this court held that SERB is under an obligation by virtue of the common law of this Commonwealth to

to be awarded, or deny an award, to the extent that the party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy. The decision of the adjudicative officer under this section shall be made a part of the record containing the final decision in the adversary adjudication and shall include written findings and conclusions and the reasons or basis therefor.
71 P.S. § 2033(c).

27.  Section 3(e) of the Costs Act states:

(e) A party dissatisfied with the fee determination made under subsection (a) may petition for leave to appeal such fee determination to the court having jurisdiction to review final orders of a Commonwealth agency under 42 Pa.C.S. (relating to judiciary and judicial procedure). If the court denies the petition for leave to appeal, no appeal may be taken from the denial. If the court grants the petition, review of the fee determination shall be in accordance with the standards in 2 Pa.C.S. § 704 (relating to disposition of appeal).
71 P.S. § 2033(e).

pay claimants the legal rate of interest on wrongfully withheld benefits from the date the money is "due and payable." Stated another way, SERB must pay claimants interest on wrongfully withheld benefits from the date SERB's duty to pay those benefits becomes fixed under the State Employees' Retirement Code (Retirement Code).[1] *Braig.*

The majority concludes that the Retirement Code is silent as to when SERB's duty to pay Claimant's death benefits arose. (Majority op. at 16–17.) However, in reaching that conclusion, the majority does not consider the definition of the term "beneficiary" in section 5102 of the Retirement Code,[2] which I find controlling.

Section 5102 of the Retirement Code defines a "beneficiary" as the "person or persons last designated in writing to [SERB] by a member to *receive* [the member's] accumulated deductions or a lump sum benefit *upon the death* of such member." 71 Pa.C.S. § 5102 (emphasis added). Thus, under section 5102 of the Retirement Code, a beneficiary is entitled to receive death benefits upon the death of the retirement system member. Absent a special provision in the statute governing SERB's duty to pay death benefits to a beneficiary like Claimant,[3] Claimant's death benefits became due and payable upon the death of her husband on October 8, 1995.

1. 71 Pa.C.S. §§ 5101–5956.

2. 71 Pa.C.S. § 5102.

3. When a general provision in a statute is in conflict with a special provision in the same statute, and the conflict is irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision. Section 1933 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1933. Section 5905(g) of the Retirement Code, 71 Pa. C.S. § 5905(g), provides that when an *active* member dies, death benefits are due and payable to a beneficiary within 60 days of receipt of certification of death and other necessary data. Thus, section 5905(g) is a special provision of the statute that sets forth an exception

The majority also states "it would be unreasonable and inequitable to award legal interest to Claimant for the entire period of time from the date of Judge Hutchinson's death to the date payment of death benefits were disbursed by SERB." (Majority op. at 17.) I strongly disagree. In fact, I believe it would be unreasonable and inequitable *not* to award interest to Claimant for the entire period from October 8, 1995 to May 31, 1996.

In *Braig,* this court stated that "*any* failure by [SERB] to timely [pay benefits] at the time fixed for payment will be considered a wrongful withholding of the sum due, warranting an award of interest at the legal rate from the date the money was due and payable." *Id.* at 886–887 (emphasis added). Indeed, when SERB fails to pay benefits to a beneficiary in a timely manner, SERB has the use of that money until SERB makes payment, allowing SERB to earn interest on money rightfully belonging to the beneficiary. Certainly, it would be unreasonable and inequitable for this court to allow SERB to keep the interest acquired because of its delayed payment to the beneficiary. Because SERB is not entitled to such interest, there is no loss to SERB if it must pay interest for the entire period of a delay. However, there is a loss to the beneficiary, and a gain to SERB, if SERB is allowed to keep the interest that SERB earns with the money of a beneficiary.[4]

to the general rule in section 5102. However, section 5905(g) does not apply here because Claimant's husband was not an *active* member of the retirement system when he died. Therefore, the general rule at section 5102 applies here, requiring that death benefits are due and payable upon the death of a retirement system member.

4. I note that the doctrine of unjust enrichment expresses the general principle that a party unjustly enriched at the expense of another should be required to make restitution for benefits received where it is just and equitable to do so and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. *Crawford's Auto Center v. Pennsylva-*

Because SERB earned interest using Claimant's money from October 8, 1995 to May 31, 1996, I would award Claimant interest for that entire period.

*nia State Police,* 655 A.2d 1064 (Pa.Cmwlth. 1995). Here, I believe that SERB should be required to make restitution to Claimant for the interest that SERB received on her money.